# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and COMMONWEALTH OF MASSACHUSETTS, *ex rel.* MICHAEL A. WILLETTE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION |
| UNIVERSITY OF MASSACHUSETTS, WORCESTER A/K/A UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL, THE ESTATE OF LEO VILLANI, AND JOHN DOES, *et al.*, | ) ) ) ) ) ) | NO. 13-40066-TSH |
| Defendants. | ) ) | |

_____

## MEMORANDUM AND ORDER ON DEFENDANT UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL'S MOTION TO DISMISS (Docket No. 39) AND PLAINTIFF-RELATOR'S CROSS-MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT (Docket No. 47)

### January 21, 2015

HILLMAN, D.J.

### Background

Plaintiff-Relator Michael Willette ("Willette") has filed a *qui tam* lawsuit against the University of Massachusetts Medical School ("UMMS" or "the medical school") and the Estate of Leo Villani, alleging that Defendants committed violations of the federal False Claims Act (Counts I, II, III, V, VI and VIII of the Second Amended Complaint) and the Massachusetts False Claims Act (Counts VII and IX).[1] As is relevant here, the False Claims Act imposes civil liability upon "[a]ny person" who (1) knowingly presents a false or fraudulent claim for payment

---

[1] Willette has agreed to dismiss Count IV of the Second Amended Complaint, which alleges unjust enrichment under principles of Massachusetts common law.

to the United States government, (2) knowingly makes a false record or statement material to such a false claim, and (3) conspires to present such a false claim or make such a false statement. 31 U.S.C. § 3729(a)(1)(A)-(C).[2] The statute further prevents employers from retaliating against employees who engage in whistleblowing activity. 31 U.S.C. § 3730(h). Willette is a former employee of Commonwealth Medicine's Center for Health Care Financing (CHCF). Commonwealth Medicine is the health care consulting division of UMMS. CHCF is the unit of Commonwealth Medicine that is responsible for identifying third-party entities that may be responsible for the cost of health care services provided to certain patients.

The Second Amended Complaint describes two fraudulent schemes. First, the complaint alleges that in 2009, Willette and his friend and colleague Leo Villani discovered an error in the computer system used to allocate payments recovered from third-party entities. Villani took advantage of this computer glitch to divert over $3 million into his personal accounts. Willette discovered the fraud after Villani's death, when he was named personal representative for the Villani estate. Willette claims that upon reporting the theft, UMMS officials restricted his computer access while investigating Villani's fraud, and verbally demeaned Willette in front of coworkers. Second, the complaint alleges Commonwealth Medicine and CHCF falsely inflated the costs of Medicaid-related services for which the federal government provides reimbursement through the "federal financial participation" funding mechanism.

UMMS moves to dismiss on the basis that the medical school is not subject to *qui tam* liability in federal court, and the complaint fails to state a claim.

---

[2]An action under the FCA can be commenced in two ways: (1) by the U.S. Government against the alleged false claimaint, *see* § 3730(a), or (2) by a private person (the "relator") against the alleged false claimant "in the name of the Government." 3730(b)(1). If a relator initiates the FCA action, he or she must first present the complaint and supporting evidence to the U.S. Government, § 3730(b)(2). When (as here) the Government declines to intervene in the case, the relator has the exclusive right to prosecute the action. *See* §§ 3730(c)(3).

## Discussion

### *Whether UMMS is Subject to Liability Under the False Claims Statutes*

UMMS asserts that it cannot be sued under the federal False Claims Act (FCA) and the Massachusetts False Claims Act (MFCA) because the statutes do not subject the medical school to *qui tam* liability. The Supreme Court has held that the FCA does not authorize *qui tam* suits by private relators, like Willette, against states or state agencies. *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 787-88 (2000). Thus, the question for this Court is whether the UMMS programs at issue are a state or state agency.[3] If so, then the FCA and MFCA claims against UMMS must be dismissed because states cannot be sued by private relators under either statute.[4]

The First Circuit has not yet announced a test for determining whether an entity is a state for purposes of the FCA. However, several circuits have decided that the appropriate test for this inquiry is the same "arm-of-the-state" analysis that courts use for sovereign immunity purposes. *See, e.g.*, *U.S. ex rel. Lesinski v. S. Fla Water Mgmt. Dist.*, 739 F.3d 598, 601-02 (11th Cir. 2014). Since no circuit has adopted a different approach, and the parties do not offer an alternative, the Court will apply the arm-of-the-state analysis.

The test involves two inquiries. First, courts must examine whether "the state clearly structured the entity to share its sovereignty." *Fresenius Med. Care Cardiovascular Resources,*

---

[3] This question is dispositive, and therefore the Court need not reach UMMS's additional argument that constitutional principles of sovereign immunity bar suit against the medical school. *Stevens* makes clear that the FCA does not allow *qui tam* suits by private relators against states. *Stevens*, 529 U.S. 765, 787-88 (2000). Accordingly, any contemplation of whether it *would be* constitutional for Congress to authorize such liability is superfluous. Justice Ginsburg has counseled that when a court is confronted with this circumstance, it should dismiss the relator's complaint "without opining 'on the constitutionality of what Congress might have done, but did not do.'" 529 U.S. at 788 (Ginsburg, J., concurring).

[4] If UMMS is a state, the Massachusetts False Claims Act claims would also be subject to dismissal. That statute also authorizes suits against "any person," M.G.L. c. 12 § 5B, and because the MFCA was modeled on the similarly worded FCA, Massachusetts courts look to cases interpreting the federal statute for guidance in construing the MFCA. *Scannell v. Attorney Gen.*, 872 N.E.2d 1136, 1138 n.4 (Mass App. Ct. 2007).

*Inc. v. P.R. and the Caribbean Cardiovascular Center Corp.*, 322 F.3d 56 (1st Cir. 2003). In

answering this question, courts should be guided by factors such as:

1) whether the entity has the funding power to satisfy judgments without direct state participation;
2) whether the entity's function is governmental or proprietary;
3) whether the entity is separately incorporated;
4) whether and to what extent the state exerts control over the entity;
5) whether the agency has the power to sue or be sued, and enter contracts in its own name;
6) whether the entity's property is subject to state taxation;
7) whether the state has immunized itself from responsibility for the entity's acts or omissions;
8) whether state courts have treated the entity as part of the state.

*Id.* at 62 n.6, 70. Second, if these factors are inconclusive, the court moves on to the

"dispositive" inquiry of whether there is a risk, "legally or practically," that damages will be paid

from the state treasury. *Id.* at 68. If such a risk exists, then the entity is an arm of the state.

In this case, the first set of factors uniformly point in the direction of finding that UMMS

is an arm of the state. The Commonwealth of Massachusetts exerts significant control over the

University of Massachusetts system, including UMMS. The Governor appoints sixteen of

nineteen voting members of the Board of Trustees for the university system, and the chair of the

board "serves at the governor's pleasure." M.G.L. c. 75 § 1A. The UMass Board of Trustees

manages the university "on behalf of the Commonwealth." M.G.L. c. 75 § 12. UMass must

submit an annual budget to the Commonwealth, including separate estimates for the medical

school, M.G.L. c. 75 § 7, 36, and the Massachusetts General Court appropriates sums for the

operation of the university. M.G.L. c. 75 § 8.

The Massachusetts Supreme Judicial Court has found that UMMS "has no authority to

issue bonds" or "sue or be sued in its own name," *McNamara v. Honeyman*, 406 Mass. 43, 48,

546 N.E. 2d 139 (1989), and other state court decisions have found that UMMS "is an agency of

the Commonwealth." *Chapman v. Univ. of Mass. Med. Ctr.*, 423 Mass. 584, 584, 670 N.E.2d 166 (1996) (citing *McNamara*, 406 Mass. 43). By Willette's own admission, CHCF is designed to serve the governmental function of "help[ing] Massachusetts' state-government-run health and human service agencies save public resources." *See, e.g.*, Pl.'s Second Am. Compl. ¶ 6. Further, the generation of revenue by Commonwealth Medicine and CHCF described by Willette is "decidedly" a governmental function—not a proprietary one. *Wojcik v. Mass. State Lottery Com'n*, 300 F.3d 92, 100 (1st Cir. 2002).

To the extent that Willette argues that Commonwealth Medicine and CHCF are independent of UMMS and the university system, that assertion is belied by admissions in his own pleadings. Willette concedes that the programs are not separately incorporated, but are a "division of UMMS." Pl.'s Opp'n. to Mot. to Dismiss at 8. The Second Amended Complaint repeatedly refers to Commonwealth Medicine and CHCF as part of UMMS, and in turn describes UMMS as a state agency. *See, e.g.*, Pl.'s Second Am. Compl. ¶ 5 ("Through Commonwealth Medicine's Center for Health Care Financing, *an arm of the University of Massachusetts and UMMS*, . . .") (emphasis added); *see also* Pl.'s Second Am. Compl. ¶¶ 6, 51, 57, 73. Further, Willette makes no claim that Massachusetts has expressly immunized the Commonwealth from responsibility for the acts of Commonwealth Medicine or CHCF.[5]

If any doubt remained, the answer to the second, dispositive inquiry is that Massachusetts bears the risk of paying a judgment awarded against UMMS. This risk is codified in regulations issued by the Comptroller of the Commonwealth. Section 5 of title 815 of the Code of

---

[5] The Court notes that the Commonwealth *has* immunized itself from responsibility for UMMS programs in the past. In 1997, the Massachusetts Legislature "separate[d] the operations, assets, liabilities and obligations of the existing clinical division" of UMMS, known as UMass Medical Center, thereby privatizing the clinical division so that it could "operate as a self-supporting entity." *See* 1997 Mass. Acts Ch. 163 § 1(i). Instructively, the Legislature has not done so with Commonwealth Medicine or CHCF.

Massachusetts Regulations governs the payment of judgments and settlements against UMMS. That regulation sets forth the procedures for paying "judgments for claims against the Commonwealth and its agencies," and defines "agency" to include institutions of higher education. 815 Mass. Code Regs. § 5.02. Willette does not dispute that the Commonwealth is the financial backstop for the medical school and its programs, and instead relies on the assertion that it would be "possible" for Commonwealth Medicine and CFCH to pay their own way in the event of a judgment. But it is the risk that the state treasury will be on the hook, not the possibility of satisfying the judgment from elsewhere, that is the relevant inquiry in the First Circuit. *Id.* ("[T]he dispositive question concerns the *risk* that the damages will be paid from the public treasury.") (emphasis added). The fact that the Commonwealth's purse is legally vulnerable to judgments levied against the state's university makes UMMS, including Commonwealth Medicine and CHCF, an arm of the state.

This conclusion is consistent with a long list of decisions from this District that have universally found UMMS and its programs to be arms of the state. *See, e.g.*, *Rasheed v. Newry*, 2013 WL 2632598, CV No. 12-12094-RGS (D. Mass. June 12, 2013) (finding that UMass Correctional Health, a program of UMMS, was an arm of the state); *Cutts v. Dennehy*, 2010 WL 1344977, CV No. 09-10902-DPW (D. Mass. March 30, 2010) (same); *Jaundoo v. Clarke*, 690 F. Supp. 2d 20, 29 (D. Mass. 2010) (same); *McGee v. Umass Corr. Health*, 2010 WL 3464282, CV No. 09-40120-FDS (D. Mass. Sept. 1, 2010) (same); *BT INS, Inc. v. Univ. of Mass.*, 2010 WL 4179678, CV No. 10-11068-DPW (D. Mass. October 19, 2010) (stating that "[t]he First Circuit has not undertaken to disturb [the] settled conclusion among Judges of the District of Massachusetts [that UMMS and its programs are arms of the state]).

In the face of this settled consensus, Willette nonetheless asks this Court to find that Commonwealth Medicine and CHCF are independent from Massachusetts. However, Willette presents no meaningful distinction between CHCF and the UMMS programs at issue in prior cases. Further, Willette's reliance on the Tenth Circuit's decision in *U.S. ex rel Sikkenga v. Regence Bluecross Blueshield of Utah* is unavailing. To be sure, the *Sikkenga* court found that a state-owned laboratory was not an arm of the state because it was autonomous and financially independent from Utah. 472 F.3d 702 (10th Cir. 2006). However, that conclusion hinged on the facts that (1) the record and state law made clear that Utah's treasury was *not* legally liable for any judgment against the laboratory; and (2) the laboratory was incorporated separately from the state university under Utah's regular business corporation statute. *Id.* at 718-19. As discussed above, neither of those circumstances exists here. Commonwealth Medicine and CHCF are unincorporated subdivisions of UMMS, and Massachusetts is legally vulnerable for any judgments rendered against UMMS.

This Court declines to upset the consensus that UMMS and its programs are arms of the state. For the foregoing reasons, UMMS's motion to dismiss will be granted.

### Whether Plaintiff-Relator Should Be Granted Leave to File a Third Amended Complaint

Opposing UMMS's motion to dismiss, Willette cross-moves for leave to file a third amended complaint. The proposed Third Amended Complaint adds the following defendants: Commonwealth Medicine, Robert Jenal, Thomas Manning, John Robertson, Marc Thibodeau, Patricia O'Day, Richard Stanton, Michael Collins, and Joyce Murphy (the "Individual Defendants").[6] As stated above, Commonwealth Medicine is an arm of the state and therefore is

---

[6] The Court notes that Local Rule 15.1(b) requires a party moving to amend a pleading to add a new party to "serve . . . the motion to amend upon the proposed new party at least 14 days in advance of filing the motion, together with a separate document stating the date on which the motion will be filed." The rule further requires that a motion to amend a pleading to add a new party be accompanied by a certification of compliance with the rule. Willette has not

not subject to FCA or MFCA liability. However, counsel indicated at oral argument that the other persons named as defendants in the Third Amended Complaint—all formerly employed at UMMS, Commonwealth Medicine, and/or CHCF—are being sued in their capacity as individuals and not as state employees. Despite this distinction, the Court denies Willette's request for leave to file a third amended complaint as futile.

With respect to the fraud claims against the Individual Defendants (Counts I, II, III, IV, V, and VI), the proposed Third Amended Complaint does not set forth its allegations with sufficient particularity under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake."[7] To satisfy the particularity requirement, a relator must do more than make "conclusory allegations and references to 'plans and schemes.'" *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 (1st Cir. 2007). Instead, the complaint must specify the "time, place, and content of an alleged false representation." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009). Further, where the complaint alleges that defendants themselves submit false claims to government programs, the relator must identify the particular false claims submitted to the government, including "who filed the claims, the content of the claims, when such claims were submitted, and how much [they] sought in payment." *U.S. ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 352 (D. Mass. 2011). This Court recognizes that the 9(b) standard permits flexibility for relators to leave some questions unanswered, as long as the complaint as a whole is sufficiently

---

fulfilled these requirements. For the reasons discussed below, however, the motion to amend is denied as futile, and therefore non-compliance with Local Rule 15.1(b) is moot.

[7] This heightened pleading requirement applies to Willette's claims for presentation of false claims under 31 U.S.C. § 3729(a)(1)(A), making false statements material to a false claim under 31 U.S.C. § 3729(a)(1)(B), and conspiring to violate the False Claims Act under 31 U.S.C. § 3729(a)(1)(C). *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009). The heightened standard also applies to the state FCA claims. *See U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 n.8 (1st Cir. 2007) (affirming district court's application of Rule 9(b) to state claims because "[t]he heightened pleading standard generally applies to state law fraud claims brought in federal court").

particular. *See Gagne*, 565 F.3d at 45. However, even providing Willette with the benefit of such flexibility, the proposed Third Amended Complaint fails to meet the requirements of 9(b).

The complaint recounts an elaborate and convoluted scheme by which Commonwealth Medicine, CHCF, and the Individual Defendants unlawfully obtained federal Medicaid reimbursements by falsely inflating reimbursable costs through Interdepartmental Service Agreements ("ISAs") with other state agencies. However, the proposed complaint does not describe with specificity the time, place, content, or falsity of the claims presented or representations made by the defendants. The closest it comes is the circular and speculative statement that, "[a]s a result of the Individual Defendants' actions and participation in the fraudulent activities described above, numerous false claims were submitted to the federal government." Proposed Third Am. Compl. ¶ 114. Rule 9(b) requires more.[8] *See, e.g.*, *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 235 (1st Cir. 2004) (stating that a complaint's description of conduct that *may* lead to false claims does not permit the court to speculate that false claims were in fact submitted); *U.S. ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 353 (D. Mass. 2011) (stating that relator's failure to provide "the time, place, and content of an[y] alleged false representation" was "*per se* fatal" to the complaint's indirect false claims counts); *United States ex rel. Walsh v. Eastman Kodak Co.,* 98 F.Supp. 2d 141, 147 (D. Mass. 2000) ("Without citing a single false claim arising from an allegedly false invoice, Relator has not met even a bare-bones Rule 9(b) test.").

The Court also rejects Willette's assertion that description of the purported scheme's "basic framework" is enough to establish with particularity the fraudulent nature of UMMS's reimbursement practices. Fifty pages long with seventeen pages of exhibits, the complaint is

---

[8] Nor does the Third Amended Complaint's description of the "Sohema Project" assist Willette. The fact that the federal government paid a greater sum for a state Medicaid project because it cost more than originally anticipated does not establish that UMMS made any false claims or false representations to obtain federal reimbursements.

replete with accusations that UMMS "unlawfully shift[ed]" costs, "siphoned millions" in a "fraudulent manner," engaged in "systemic abuse of muddy state procurement and contracting vehicles," and "unlawfully bolstered costs" to "turn[] a profit." Beyond these conclusory labels, however, the complaint offers insufficient detail to "strengthen the inference of fraud beyond possibility." *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007). The meandering explanation of the scheme fails to connect the dots on how the Individual Defendants' efforts to maximize federal reimbursements were fraudulent or otherwise improper under the governing law. *See U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 47 (1st Cir. 2009) (stating that for purposes of pleading an FCA violation, it is "not enough to allege there has been some accounting misallocation of expenses . . . without some explanation of why [it] is fraudulent). Therefore, the proposed Third Amended Complaint would not state a claim for Counts I, II, III, IV, V, and VI.

With respect to the remaining retaliation claims against the Individual Defendants (Counts VII and IX), the proposed Third Amended Complaint is futile because it does not allege that Willette engaged in activity protected by the federal and state False Claims Acts. The retaliation provision of the FCA protects employees from retaliatory acts by their employers for "lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."[9] 31 U.S.C. § 3730(h). Conduct is protected by the FCA if it reasonably could lead to an FCA action against the employer, such as "investigations, inquiries, testimonies, or other activities [by the employee] that *concern the employer's knowing submission of false or fraudulent claims for payment to the government*." *Melrose-Wakefield Hosp.*, 360 F.3d at 237 (emphasis added). The only "retaliatory" conduct

---

[9] The retaliation provision of the MFCA is nearly identical with respect to the scope of protected conduct. *See* M.G.L. c. 12 § 5J(2) (protecting employees that engage in "lawful acts . . . in furtherance of an action under" the MFCA).

alleged in the proposed Third Amended Complaint are actions taken by the UMMS staff because of Willette's report of Leo Villani's theft from the medical school. Although it may be "whistleblowing" in a colloquial sense, reporting the Villani fraud was not protected activity under the FCA and MFCA, because it did not concern the submission of false claims to the government *by UMMS and the Individual Defendants*. As a result, the retaliation claims would fail as a matter of law.

For the foregoing reasons, Willette's cross-motion for leave to file a third amended complaint is denied as futile.

### Order

Defendant UMMS's motion to dismiss is ***granted***. Plaintiff-Relator's Motion for Leave to File Third Amended Complaint is ***denied***. Although UMMS will be terminated as a party, the Estate of Leo Villani remains as a defendant in this action. The Court is aware of its prior Order indicating that it will solicit written consent from the United States and the Commonwealth of Massachusetts before entering an order of dismissal (Docket No. 28), and will do so accordingly.[10] The United States and the Commonwealth of Massachusetts shall have 14 days from the date of this Order to file their consent or their objections to the Order. Failing such filings, the action against Defendant University of Massachusetts, Worcester a/k/a University of Massachusetts Medical School shall be dismissed.

SO ORDERED.


*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[10] Written consent by the government is also required by statute. *See* 31 U.S.C. § 3730(b)(1) (stating that an FCA action by a relator "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting").