**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

| | |
|---|---|
| **UNITED STATES OF AMERICA and** | ) |
| **THE COMMONWEALTH OF MASSACHUSETTS,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **Civil Action No.: 13-40066-TSH** |
| *ex rel*. **MICHAEL A. WILLETTE,** | ) |
| | ) |
| **Relator,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| **UNIVERSITY OF MASSACHUSETTS,** | ) |
| **WORCESTER A/K/A UNIVERSITY OF** | ) |
| **MASSACHUSETTS MEDICAL SCHOOL, and** | ) |
| **THE ESTATE OF LEO VILLANI,** | ) |
| | ) |
| **Defendants.** | ) |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF-RELATOR'S**
**MOTION FOR AWARD OF RELATOR'S SHARE**
**OR, IN THE ALTERNATIVE,**
**MOTION TO SCHEDULE STATUS CONFERENCE**
**AND ESTABLISH A DISCOVERY SCHEDULE AS TO RELATOR'S SHARE**

Pursuant to 31 U.S.C. 3730(d)(2), Relator Michael Willette respectfully submits this

Memorandum of Law in support of his Motion for Award of Relator's Share.  In the alternative,

Relator respectfully requests that the Court allow limited discovery on the issues relevant to

Relator's Share of the Villani settlement, schedule a status conference on the preliminary issues

of Relator's Share of the Villani settlement, and schedule a hearing for the presentation of

evidence and argument for this Court to establish Relator's Share of said settlement.

## INTRODUCTION

There are no arguments to the basic facts here.  Relator Michael Willette, as the original source of the information, filed a *qui tam* action under seal on June 5, 2013, after disclosing to the Commonwealth of Massachusetts and the United States (collectively "the Government") that Leo Villani, a Financial Specialist working for the University of Massachusetts ("UMass" or "Medical School"), had fraudulently attained millions of dollars as a result of his work for the Commonwealth's health system. Relator Willette was the first, and only, source of information about this fraud.  Indeed, the Commonwealth of Massachusetts admittedly initiated an investigation into Mr. Villani's misconduct based on Mr. Willette's actions.

After the Governments declined to intervene in the lawsuit, Mr. Willette decided to pursue the case on his own as a private relator.  Mr. Willette and his counsel have subsequently learned that the Commonwealth has been made whole for Mr. Villani's fraud in an amount more than $3.8 million.  Some portion of that $3.8 million was also turned over to the federal government for losses it suffered due to Mr. Villani's fraud.

The federal government and the Commonwealth of Massachusetts now refuse to pay Mr. Willette his statutory share of the settlement.

Mr. Willette's decision to reveal Mr. Villani's fraud has come at a high price, including his eventual retaliatory termination by UMass for publicly embarrassing the Medical School and its faulty compliance processes.  Now, in one final turn of the knife, the Governments that recovered more than $3.8 million because of Relator's courageous actions have failed Relator and his family yet again.

## FACTUAL BACKGROUND

### A.  Procedural History of the Lawsuit

This matter was filed pursuant to the False Claims Act, 31 U.S.C. 3729 *et seq.* (the "False Claims Act" or "FCA"), and the and the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, §§ 5A-5O*,* as amended (the "Massachusetts FCA"), by Relator Michael Willette, on behalf of the United States of America and the Commonwealth of Massachusetts.

The *qui tam* case was filed on June 5, 2013, under seal, as required by 31 U.S.C. § 3730. [ECF Docket No. 4].  Relator met with the Governments' lawyers and investigators, including Assistant U.S. Attorney ("AUSA") Christine Wichers and Assistant Attorney General ("AG") George Zachos, on at least two occasions.

Eventually, after months of investigation, the United States and the Commonwealth of Massachusetts elected not to intervene in the case.  [ECF Docket No. 27].  Thereafter, on April 29, 2014, the Court ordered that certain documents previously held under seal were to be unsealed.  [ECF Docket No. 29].

Accordingly, Relator's Second Amended Complaint, which had been filed on January 15, 2014, alleging violations of various provisions under the FCA and the Massachusetts FCA became the complaint of record.  [ECF Docket No. 15].  Relator's Second Amended Complaint was served on both Defendants - University of Massachusetts, Worcester a/k/a University of Massachusetts Medical School and Estate of Leo Villani – in late May 2014.

On August 13, 2014, Defendant Medical School filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6), 12(b)(1), 9(b), and 8(c).  [ECF Docket Nos. 39-40].  The Court granted the Medical School's Motion.  [ECF Docket No. 55].  However, the Court noted that, although the Medical School had been dismissed from the case, "the Estate of Leo Villani

remains as a defendant in this action." *U.S. v. U. of Mass., Worcester*, 80 F. Supp. 3d 296, 304

(D. Mass. 2015).  Relator appealed the Medical School's dismissal to the U.S. Court of Appeals

for the First Circuit, which remains pending at this time.  [ECF Docket No. 58].

### B.  Facts Background of Underlying Claim

Relator's Second Amended Complaint alleged, *inter alia*, the following:  Relator was a

project manager employed by the Medical School in its healthcare consulting division, and more

specifically within its Accident/Trauma Recovery Unit.  *See* Second Am. Compl. [ECF Docket

No. 15] at ¶ 22.  The Accident/Trauma Recovery Unit identified and sought recovery from third-

party entities—like automobile insurers—responsible for the reimbursement of health care costs

paid by governmental programs, including Medicaid.  *Id.*

Leo Villani ("Villani") was a financial specialist employed by the Medical School and

the manager of its Estate Recovery Unit.  *Id.* at ¶ 78.  He was also Relator's friend.  In August of

2009, Relator discovered inconsistencies in the financial information on the Medical School's

computer system, including Medicaid recoveries listed multiple times.  *Id.*  Relator learned that

Villani had the ability to enter duplicate transmittal numbers, essentially allowing Villani to enter

the same recovery into the system multiple times.  *Id.* at ¶¶ 79-80.  Relator asked his and

Villani's supervisor about the inconsistencies, but was told not to concern himself with them.  *Id.*

at ¶ 81.

On December 27, 2012, Villani died following an automobile accident.  *Id.* at ¶ 83.

Villani had named Relator as his personal representative in his will.  *Id.* at ¶ 84.  In the course of

examining Villani's paperwork and affairs, Relator discovered that for many years Villani had

been taking funds recovered by his unit and placing them into a personal bank account entitled

"Leo Villani d/b/a/ Mass Estate Recovery Systems."  *Id.* at ¶ 86.  Those recovered funds were

owed to the government as reimbursement for payment for medical care.  Villani made entries in the Medical School's computer system disguising the transactions.  *Id.* at ¶ 89.  While Villani designed his personal bank account to appear related to the Medical School's Estate Recovery Unit, he was in fact using the funds deposited therein for personal use.  *Id.* at ¶ 95.

       **C.**     **Facts Relevant to Settlement with the Government**

      Relator, despite his emotional distress at uncovering his friend's fraud, approached his supervisors at the Medical School and detailed his findings.  *Id.* at ¶ 98.  When his supervisors were unresponsive to his findings, Relator met with the Attorney General's office and informed the Medicaid Fraud Unit of Villani's fraud.  *Id.* at ¶ 148.  Plaintiff subsequently filed the instant lawsuit.

      Relator provided the Government with a comprehensive road map to the fraud, including detailed anecdotal and documentary evidence and the names of witnesses who could corroborate his allegations. He filed his case under seal, provided a detailed disclosure of evidence supporting the case, including documents which directly shed light on the Defendant's scienter.

      Based on the Relator's disclosures and the subsequent lawsuit, the Estate of Villani has reimbursed the Commonwealth for Mr. Villani's fraud.  *See* Ex. A (Affidavit of James G. Healy, filed in the *Estate of Leo Villani v. Creditors*, Docket No. W013P-0588-EA, Probate and Family Court Department, Worcester County) ("Healy Aff."), ¶ 6.[1]  In turn, UMass paid the Massachusetts Executive Office of Health and Human Services ("EOHHS") to reimburse it for losses due to Mr. Villani's misconduct and UMass' negligence.  *Id.* at ¶¶ 3-4.

---

[1] UMass has recovered only $2,641,612.57 of the $3,807,166.46 defrauded by Mr. Villani.  *See* Ex. A (Healy Aff.), ¶¶ 3, 5-6.  According to UMass, it also received $700,000 from its insurer and $300,000 from a settlement with the bank that enabled Mr. Villani's fraud.  *See id.* at ¶ 6. All of this $1 million was part of the funds paid to the EEOHS.  *See id.*

On September 16, 2015, Relator's counsel, after learning of the payments at a court hearing in the above-named probate court, contacted Christine Wichers, an AUSA for the District of Massachusetts, and asked whether the federal Government intended to pay a Relator's share to Mr. Willette:

> Christine: At the Probate Court hearing which I attended, UMass counsel stated on the record that it recovered $2,341,612.57 which was turned over to the U.S. attorney's office. I retrieved a copy of the official court recording to ensure the accuracy of the representation.
>
> Is it the government's position that my client is not entitled to a bounty on that amount? I really would appreciate a response. Thank you.

Exhibit B (September 16, 2015 email from A. Cohen to C. Wichers).

After several days, and a number of clarifying emails, AUSA Wichers responded as follows:

> Allyson,
>
> Assuming (although I have not confirmed) that the Commonwealth has remitted to the United States some portion of the $3.8 million that UMass voluntarily repaid to the Commonwealth, I am not aware of any legal entitlement that Mr. Willette would have to any portion of such remittance. **Therefore, the United States does not intend to pay Mr. Willette any portion of the remittance**.
>
> Regards,
>
> Christine

Exhibit C (September 18, 2015 email from C. Wichers to A. Cohen) (emphasis added).

## LEGAL ARGUMENT

### A. Relator Should Be Awarded A Portion Of The Funds Received By Both The Commonwealth And The United States As A Result Of His Disclosures and *Qui Tam* Lawsuit

"Originally enacted in 1863, the False Claims Act (FCA) is the most frequently used of a handful of extant laws creating a form of civil action known as *qui tam*." *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 768 (2000). In enacting the FCA, "Congress

wrote expansively, meaning to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003) (internal quotation omitted).  "Although the Attorney General may sue under the FCA, so may a private person, known as a relator, in a *qui tam* action brought 'in the name of the Government,' but with the hope of sharing in any recovery."  *Id.* at 122.

The FCA provides that a relator should receive a share of any and all "proceeds of the action or settlement."  31 U.S.C. 3730(d).  The Massachusetts False Claims Act tracks the language of the federal FCA.  *See* Mass. Gen. Laws ch. 12, § 5F.[2]

Specifically, the FCA states that if the government entity initially intervenes in the case, a relator receives "at least 15 percent but not more than 25 percent of the proceeds of the action or settlement."  31 U.S.C. 3730(d)(1) (emphasis added).  *See also* Mass. Gen. Laws ch. 12, § 5F(1).

Further, if the government declines intervention (*which occurred here*) in a case, a relator receives "not less than 25 percent and not more than 30 percent of the proceeds of the action of settlement."  31 U.S.C. 3730(d)(2) (emphasis added).  *See also* Mass. Gen. Laws ch. 12, § 5F(4). *See also Stevens*, 529 U.S. at 769-70 ("The relator receives a share of any proceeds from the action—generally ranging from 15 to 25 percent if the Government intervenes (depending upon the relator's contribution to the prosecution), and from 25 to 30 percent if it does not (depending upon the court's assessment of what is reasonable)—plus attorney's fees and costs.").

The legislative history of the 1986 amendments to the FCA makes clear that the fee "is provided to develop incentives for people to bring the information forward."  132 Cong. Rec.

---

[2] The same analysis applicable here to the federal FCA would apply to the Massachusetts FCA. *See Scannell v. Attorney General*, 872 N.E.2d 1136, 1138 n. 4 (Mass. App. Ct. 2007) ("[T]he MFCA was modeled on the similarly worded Federal False Claims Act, . . ..   Therefore, we look for guidance to cases and treatises interpreting the Federal False Claims.").

H9382-03 (Oct. 7, 1986) (statement by Rep. Berman).  It was Congress's intent to encourage

private citizens to bring fraud perpetrated on the government to the government's attention:

> Congress made it clear that its "overall intent in amending [§ 3730]
> [was] to encourage more private enforcement suits." [S. Rep. 99-
> 345], at 23–24, 1986 U.S.C.C.A.N. at 5288–89. It emphasized its
> belief that "[i]n the face of sophisticated and widespread fraud ...
> only a coordinated effort of both the Government and the citizenry
> will decrease this wave of defrauding public funds." *Id.* at 2, 1986
> U.S.C.C.A.N. at 5267.

*United States ex rel. Bledsoe v. Community Health Systems*, 342 F.3d 634, 648 (6th Cir. 2003).

Thus, the "incentive compensation" is paid to a relator "even if that person does nothing

more than file the action in federal court."  132 Cong. Rec. H9382-03 (*cited in U.S. ex rel.*

*Simmons v. Samsung Electronics Am., Inc.*, No. PWG-11-cv-2971, 2015 WL 4064729 at *2 (D.

Md. July 1, 2015)).  The "minimum share is 'generally viewed as a finder's fee.'"  *United States*

*ex rel. Rille v. Cisco Systems*, No. 4:04CV00988–BRW, 2011 WL 4352309 at *2 (E.D. Ark.

Sept. 19, 2011) (citing *United States ex rel. Alderson v. Quorum Health Group, Inc.,* 171 F.

Supp.2d 1323, 1331 (M.D. Fla. 2001)).  Because of the crucial nature of the incentive to the

FCA's scheme, "the FCA ought to be interpreted in a manner that will maintain the incentive

underlying the *qui tam* aspect of the FCA."  *U.S. v. Bisig*, No. 100CV335JDWTL, 2005 WL

3532554 at *4 (S.D. Ind. Dec. 21, 2015).

A relator is entitled to a share of a settlement or other recovery made by the government,

even when the government declines to intervene, because that settlement or recovery constitutes

an "alternate remedy" under 31 U.S.C. § 3730(c)(5). *See U.S. ex rel Bledsoe*, 342 F.3d at 649;

*U.S. ex rel. Barajas v. United States*, 258 F.3d 1004, 1013 (9th Cir. 2001); *U.S. ex rel. LaCorte v.*

*Wagner*, 185 F.3d 188, 191 (4th Cir. 1999); *In re Pharmaceutical Industry Average Wholesale*

*Price Litigation*, 892 F. Supp. 2d 341, 344 (D. Mass. 2012).  The Sixth Circuit explained as

follows:

> If the government has recovered funds from conduct asserted in Relator's *qui tam* action, then the government has essentially settled Relator's claims, regardless of whether it formally intervened in Relator's action or not. . . . [T]he government may not settle a relator's claims and seek to avoid paying a relator his or her statutory share to the settlement proceeds[.]

*Bledsoe*, 342 F.3d at 649-50.

The alternative would completely undermine the critical incentive for the relator that underpins the FCA: "[T]he government could decline to intervene in a *qui tam* suit, then settle that suit's claims separately and deny the relator his or her share[.]" *In re Pharmaceutical Industry*, 892 F. Supp. 2d at 344 (quoting *Bledsoe*, 342 F.3d at 649).

Federal courts have broadly interpreted settlements by the government with the defendant to a *qui tam* action either as part of the *qui tam* "action" or as an "alternative remedy," and they have consistently held that the relator is entitled to a share. In *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 892 F. Supp. 2d 341, 344 (D. Mass. 2012), the relators filed a *qui tam* case against the defendant, and the government declined to intervene. Another, separate, relator filed a separate *qui tam* action, against the same defendant, alleging similar acts by that defendant. The government entered into a settlement agreement with the defendant in which the government consented to dismiss all claims similar to those alleged by the first relator. The defendant moved for summary judgment as to the claim of the initial relators based on the settlement agreement, and this Court granted the motion. The government refused to provide the initial relators with a share of the settlement proceeds. The initial relators moved for an award of a relator's share.

This Court held that the initial relators were entitled to a share. *Id.* at 345-46. The Court reasoned that the government's settlement with the defendant effectively extinguished the initial relators' claims and constituted an "alternate remedy" under 31 U.S.C. § 3730(c)(5). *Id.* at 344.

The Court suggested, but did not order, a hearing to determine the fairness of the settlement and the amount of the relators' share. *Id.* at 346.

Similarly, in *U.S. v. Najjar*, No. 6:10-cv-414-Orl-31DAB, 2015 WL 4606265 (M.D. Fla. July 30, 2015), the court determined that the relator was entitled to a share of the government's recovery based on the relator's information. The relator discovered that two brothers fraudulently transferred assets to one another so as to avoid paying the government. The relator brought a *qui tam* suit, and alleged misconduct by both brothers in the complaint. However, the relator only named one of the brothers as a defendant. The government settled with both brothers, but refused to provide a relator's share for the settlement with the brother not named as a defendant. The relator moved for a share of the settlement with the brother not named in the suit, and argued that the settlement was a part of the *qui tam* "action" because the relator had alleged all of the facts in his complaint that led to the settlement. *Id.* at *2.

The court held that the relator was entitled to a share, stating that "the purposes behind the False Claims Act counsel in favor of an award to the Relator here." *Id.* at *3. The court reasoned that the relator brought the full extent of the brothers' fraud to the government's attention, and that without the relator the government would not have known of the fraudulent conduct. The court found that it was in accordance with the FCA's purpose of encouraging whistleblowing to hold that the settlement was a part of the relator's *qui tam* "action" under the FCA. *Id.* at *4.

Here, after learning of Villani's fraud, Relator did the following: (1) informed his superiors of Mr. Villani's fraud; (2) contacted the Massachusetts' Attorney General's Office; and, (3) filed the instant action. There is no question that Relator's information led to the investigation of Mr. Villani's fraud. *See* Ex. D (Affidavit of Kyle David, filed in the *Estate of*

*Leo Villani v. Creditors*, Docket No. W013P-0588-EA, Probate and Family Court Department, Worcester County) ("David Aff.") at ¶ 11.

Also, UMass confirmed an investigation by the Commonwealth when it wrote to Relator, on February 12, 2013:  "Assistant Attorney General George Zachos, of the AG's Medicaid Fraud Division, has been informed of the University's investigation into the potential misappropriation of state funds and that you initially brought this to the University's attention."  Ex. E (Email from UMass to Relator, dated Feb. 12, 2013).  Assistant AG Zachos remains involved in the case even today.  Accordingly, there is no question that Relator brought the misconduct that was the basis of the eventual settlement to the attention of the Government.

At some point after Relator brought his *qui tam* action against the Medical School and Villani's Estate, the Commonwealth settled with and recovered from Villani's Estate.  The Commonwealth then reimbursed the United States.  Now, both the United States and the Commonwealth refuse to reimburse Relator for his share.

As in *In re Pharmaceutical Industry*, the Governments' settlement and recovery has effectively extinguished Relator's *qui tam* claim and constitutes an "alternate remedy" under 31 U.S.C. § 3730(c)(5).  The Governments cannot be allowed to decline to intervene in Relator's *qui tam* action, separately recover from one of the defendants to that action with regard to the same fraud that is the subject of the *qui tam* suit, and then refuse to pay a relator's share.  Multiple circuit courts and courts in this District have found such behavior on the part of a government antithetical to the FCA's purpose of encouraging fraud reporting by citizens.

Further, like in *U.S. v. Najjar*, the purposes underpinning the FCA militate for the award of a relator share.  Relator brought Villani's fraud to the Governments' attention and pursued recovery on the Government's behalf.  As with the relator in *Najjar*, absent Relator's information

and assistance, the Governments would not have known of the fraud and made a recovery.  The Governments' denial of Relator's share undermines the incentive for whistleblowers that is the crux of the FCA and which was reinforced in its 1986 amendments.

**B.  In The Alternative, Relator Should Be Permitted Discovery Into The Villani Settlement And the Funds Reimbursed To The federal Government**

This Court can quickly and easily resolve the issues as to when and how much Relator should be paid in relation to the Villani settlement.  Relator's need for discovery from government witnesses is limited and can be accomplished in short order.

There is much that has been done in secrecy, without Relator's knowledge or involvement, in this settlement.  Even the U.S. Attorney's Office is unaware of what was paid to the federal government from EOHHS.  *See* Ex. C ("*Assuming (although I have not confirmed) that the Commonwealth has remitted to the United States some portion of the $3.8 million . ..*") (emphasis added).

Relator only seeks limited discover on the issue of his Relator's Share, most of which can be conducted by written discovery.  At present, Relator believes that only the testimony of three witnesses will be necessary.

Further, Relator respectfully suggests that a status conference would be advantageous in setting the parameters for discovery, timing of motions to be filed with the Court, and the timing for an evidentiary hearing before this Court for the determination of Relator's Share.

## <u>CONCLUSION</u>

Wherefore, Relator respectfully requests that this honorable Court award him 30%, and in any event not less than 25%, of the Government's recovery.  In the alternative, Relator respectfully requests that the Court allow limited discovery on the issues relevant to Relator's Share of the Villani settlement and the amount of funds paid to the federal Government from that

settlement, schedule a status conference on the preliminary issues, and schedule a hearing for the

presentation of evidence and argument for this Court to establish Relator's Share of said

settlement.

Respectfully submitted,

**COHEN LAW SERVICES, LLC**

/s/ Allyson H. Cohen
Allyson H. Cohen, Esq. (BBO# 677526)
8 Lyman Street, Suite 200
People's United Bank Building
Westborough, MA 01581
Tel.: (508) 366 8805
Fax: (508)366-8803
acohen@cohenlawservices.com

**Of Counsel**
Brian J. McCormick, Jr., Esq. (*pro hac vice*)
**ROSS FELLER CASEY, LLP**
One Liberty Place
1650 Market Street, Suite 3450
Philadelphia, PA 19103
(215) 231-3740
bmccormick@rossfellercasey.com

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), Relator respectfully requests oral argument on this

Motion.

Respectfully submitted,

**COHEN LAW SERVICES, LLC**

/s/ Allyson H. Cohen
Allyson H. Cohen, Esq. (BBO# 677526)
8 Lyman Street, Suite 200
People's United Bank Building
Westborough, MA 01581
Tel.: (508) 366 8805
Fax: (508)366-8803
acohen@cohenlawservices.com

**Of Counsel**
Brian J. McCormick, Jr., Esq. (*pro hac vice*)
ROSS FELLER CASEY, LLP
One Liberty Place
1650 Market Street, Suite 3450
Philadelphia, PA 19103
(215) 574-2000
bmccormick@rossfellercasey.com

Attorneys for Relator-Plaintiff

## **LOCAL RULE 7.1(a)(2) CERTIFICATE**

Pursuant to Local Rule 7.1(a)(2), I certify that on September 18, 2015, I communicated with counsel for the United States concerning the subject matter of this motion in a good faith effort to resolve or narrow the issues presented herein.  AUSA Christine Wichers responded by stating that "the United States does not intend to pay Mr. Willette any portion of the remittance."

I also certify that on October 14, 2015, my co-counsel, Brian J. McCormick, Jr., communicated with counsel for the Commonwealth of Massachusetts concerning the subject matter of this motion in a good faith effort to resolve or narrow the issues presented herein. Attorney McCormick spoke on the telephone to George Zachos, Assistant Attorney General Chief, Medicaid Fraud Division, who also refused to agree to pay Mr. Willette a share of any settlement.

/s/ Allyson H. Cohen
ALLYSON H. COHEN

# WILLETTE EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
PROBATE AND FAMILY COURT DEPARTMENT

WORCESTER, SS.                              DOCKET NO. W013P-0588-EA

|  |  |
|---|---|
| ESTATE OF LEO VILLANI,<br>JOHN SHORO, PERSONAL<br>REPRESENTATIVE,<br><br>    PETITIONER<br><br>V.<br><br>CREDITORS,<br><br>    RESPONDENTS | **AFFIDAVIT OF JAMES G. HEALY** |

My name is James G. Healy, J.D., and on oath do hereby state as follows:

1.      I worked for the University of Massachusetts' Office of General Counsel from November 2008 to August 2011, and since September 2011, I have been employed by the University of Massachusetts Medical School ("UMass"). I am currently the Associate Vice Chancellor for Management at UMass. In that position, I have been involved in UMass' recovery of funds embezzled by Mr. Leo Villani ("Mr. Villani"), a former, now-deceased UMass employee.

2.      Through UMass' Estate Recovery business function unit ("ERU"), UMass acts as a contractor for the Commonwealth of Massachusetts' Office of Health and Human Services ("EOHHS") to pursue and collect on Commonwealth of Massachusetts ("Commonwealth") liens placed on Massachusetts Health payments previously made to decedents. ERU case-workers negotiate settlements with decedents' estates, in which the estates make payments to the Commonwealth, by check, in exchange for the release of the Commonwealth liens on the estates ("Lien Settlement Payments"). UMass then remits the Lien Settlement Payments to EOHHS. Mr. Villani worked as a Financial Analyst in the ERU.

3.      As explained more fully in the Affidavit of Kyle David (also submitted to the Probate Court), during the time period December 2006 through December 2012, Mr. Villani embezzled $3,807,166.46 from UMass, by stealing ninety-three (93) checks sent to ERU as Lien Settlement Payments.

4.      UMass has made EOHHS whole for the Lien Settlement Payments (intended for EEOHS) that Mr. Villani embezzled. In addition, EOHHS released its claims, if any, against UMass regarding this matter.

5.      UMass has conducted diligent efforts to pursue recovery of the $3,807,166.46 in embezzled funds. As a result of those efforts, UMass has recovered $2,641,612.57.  Accordingly, UMass's claim against the estate is in the amount of **$1,165,553.89.**

6.      Specifically, UMass has recovered the following:

|     |     |     |
| --- | --- | --- |
| a. | From Julie Villani (Mr. Villani's wife): | $1,641,612.57 |
| b. | From an insurer for UMass: | $  700,000.00 |
| c. | From the insurer for Milford Federal Savings and Loan Association (bank where Mr. Villani deposited the stolen Lien Settlement Payment Checks): | $  300,000.00 |
|    |    | $2,641,612.57 |

Signed under the pains and penalties of perjury this 29ᵗʰ day of July_____, 2015.

_____
James G. Healy, J.D.
Associate Vice Chancellor for Management
University of Massachusetts Medical School

2

# WILLETTE EXHIBIT B

**From:** Allyson Cohen
**Sent:** Wednesday, September 16, 2015 9:49 AM
**To:** 'Wichers, Christine (USAMA)'
**Cc:** Zachos, George (AGO)
**Subject:** RE: Willette v. UMass, CA No. 13-40066-TSH

Christine: At the Probate Court hearing which I attended, UMass counsel stated on the record that it recovered $2,341,612.57 which was turned over to the U.S. attorney's office. I retrieved a copy of the official court recording to ensure the accuracy of the representation.

Is it the government's position that my client is not entitled to a bounty on that amount? I really would appreciate a response. Thank you.

Respectfully yours,

**Allyson Hope Cohen, Esq.**
**Cohen Law Services, LLC**
**8 Lyman Street, Suite 200**
**Westborough, MA 01581**
**Telephone: 508-366-8805**
**Facsimile: 508-366-8803**
**_www.cohenlawservices.com_**

*"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."*
*John Adams*

**TREASURY DEPARTMENT CIRCULAR 230 DISCLOSURE:** To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**NOTICE:** This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (508-366-8805) or by electronic mail and then delete this message and all copies and backups thereof. Thank you.

**From:** Wichers, Christine (USAMA) [mailto:Christine.Wichers@usdoj.gov]
**Sent:** Tuesday, September 15, 2015 12:48 PM
**To:** jfiore@bowditch.com
**Cc:** Zachos, George (AGO); Allyson Cohen
**Subject:** Willette v. UMass, CA No. 13-40066-TSH

Dear Mr. Fiore,

I received your 9/10/15 letter requesting the US's consent to the dismissal of all claims against the Estate of Leo Villani on the grounds that a probate court has found the estate to be insolvent.

The US consents to the dismissal of relator's claims against the estate with prejudice, and consents to the dismissal of the US's claims against the estate without prejudice.

Very truly yours,

Christine J. Wichers
Assistant U.S. Attorney
One Courthouse Way
Boston, MA 02210
(617) 748-3278
Christine.wichers@usdoj.gov

# WILLETTE EXHIBIT C

**From:** Wichers, Christine (USAMA) [mailto:Christine.Wichers@usdoj.gov]
**Sent:** Friday, September 18, 2015 11:18 AM
**To:** Allyson Cohen <acohen@cohenlawservices.com>
**Cc:** Zachos, George (AGO) <george.zachos@state.ma.us>; Brian J. McCormick <bmccormick@rossfellercasey.com>
**Subject:** RE: Willette v. UMass, CA No. 13-40066-TSH

Allyson,

Assuming (although I have not confirmed) that the Commonwealth has remitted to the United States some portion of the $3.8 million that UMass voluntarily repaid to the Commonwealth, I am not aware of any legal entitlement that Mr. Willette would have to any portion of such remittance.  Therefore, the United States does not intend to pay Mr. Willette any portion of the remittance.

Regards,
Christine

Christine J. Wichers
Assistant U.S. Attorney
One Courthouse Way
Boston, MA 02210
(617) 748-3278
Christine.wichers@usdoj.gov

**From:** Allyson Cohen [mailto:acohen@cohenlawservices.com]
**Sent:** Wednesday, September 16, 2015 2:23 PM
**To:** Wichers, Christine (USAMA)
**Cc:** Zachos, George (AGO); bmccormick@rossfellercasey.com
**Subject:** RE: Willette v. UMass, CA No. 13-40066-TSH

Thank you Christine-I have copied Brian McCormick on this email to keep him in the loop. I apologize because I meant to say the State Attorney's General's Office. I was not served with the attached memorandum. However, since it was Medicaid recovery, I assume that the State turned over to the Federal Government its portion of the $3,807,166.46.

So when you indicate that you are not sure how that's relevant to Mr. Willette, are you indicating that Mr. Willette is not entitled to a relator's portion? Similarly George, is this the Commonwealth's position? Please confirm.

Respectfully yours,

**Allyson Hope Cohen, Esq.**

**Cohen Law Services, LLC**
**8 Lyman Street, Suite 200**
**Westborough, MA 01581**
**Telephone: 508-366-8805**
**Facsimile: 508-366-8803**
*www.cohenlawservices.com*

*"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."*
*John Adams*

**TREASURY DEPARTMENT CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.**

**NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (508-366-8805) or by electronic mail and then delete this message and all copies and backups thereof. Thank you.**

**From:** Wichers, Christine (USAMA) [mailto:Christine.Wichers@usdoj.gov]
**Sent:** Wednesday, September 16, 2015 12:59 PM
**To:** Allyson Cohen
**Cc:** Zachos, George (AGO)
**Subject:** RE: Willette v. UMass, CA No. 13-40066-TSH

Allyson,

I spoke with Jessica Sergi and she said you are mistaken.  She forwarded me the attached filing from the Probate Court action.  It indicates that UMass paid the MA Executive Office of Health and Human Services (EOHHS) the full $3,807,166.46 that Mr. Villani embezzled.  See Healy Aff., ¶ 4 (p.17 of the .pdf).  There is no indication that UMass paid the U.S. Attorney's Office anything.

Jessica also told me, and the attached filing states, that UMass has thus far recovered $2,641,612.57 of the $3,807,166.46 that it paid to EOHHS.  (Your email contains the number $2,341,612.57.  I'm not sure where you got that.)  But I'm not sure how that's relevant to Mr. Willette.

Regards,
Christine

Christine J. Wichers
Assistant U.S. Attorney
One Courthouse Way
Boston, MA 02210
(617) 748-3278
Christine.wichers@usdoj.gov

**From:** Allyson Cohen [mailto:acohen@cohenlawservices.com]
**Sent:** Wednesday, September 16, 2015 9:59 AM
**To:** Wichers, Christine (USAMA)
**Cc:** Zachos, George (AGO)
**Subject:** RE: Willette v. UMass, CA No. 13-40066-TSH

Elizabeth B. Burnett and Jessica C. Sergi from Mintz Levin.

Respectfully yours,

**Allyson Hope Cohen, Esq.**
**Cohen Law Services, LLC**
**8 Lyman Street, Suite 200**
**Westborough, MA 01581**
**Telephone: 508-366-8805**
**Facsimile: 508-366-8803**
**www.cohenlawservices.com**

*"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."*
*John Adams*

**TREASURY DEPARTMENT CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.**

**NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (508-366-8805) or by electronic mail and then delete this message and all copies and backups thereof. Thank you.**

**From:** Wichers, Christine (USAMA) [mailto:Christine.Wichers@usdoj.gov]
**Sent:** Wednesday, September 16, 2015 9:54 AM
**To:** Allyson Cohen

**Cc:** Zachos, George (AGO)
**Subject:** RE: Willette v. UMass, CA No. 13-40066-TSH

What is the name of the UMass atty who made this representation?  There is no way for me to confirm the truth of the representation until I get information from him/her regarding when the amount allegedly was sent, how it was sent, and to whom.

**From:** Allyson Cohen [mailto:acohen@cohenlawservices.com]
**Sent:** Wednesday, September 16, 2015 9:52 AM
**To:** Wichers, Christine (USAMA)
**Cc:** Zachos, George (AGO)
**Subject:** RE: Willette v. UMass, CA No. 13-40066-TSH

It is a digital recording. I will make a copy and send it to you.

Respectfully Christine, this still does not answer my question. What is the government's position?

Respectfully yours,

**Allyson Hope Cohen, Esq.**
**Cohen Law Services, LLC**
**8 Lyman Street, Suite 200**
**Westborough, MA 01581**
**Telephone: 508-366-8805**
**Facsimile: 508-366-8803**
***www.cohenlawservices.com***

*"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."*
*John Adams*

**TREASURY DEPARTMENT CIRCULAR 230 DISCLOSURE:** To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**NOTICE:** This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (508-366-8805) or by electronic mail and then delete this message and all copies and backups thereof. Thank you.

**From:** Wichers, Christine (USAMA) [mailto:Christine.Wichers@usdoj.gov]
**Sent:** Wednesday, September 16, 2015 9:50 AM
**To:** Allyson Cohen
**Cc:** Zachos, George (AGO)
**Subject:** RE: Willette v. UMass, CA No. 13-40066-TSH

Please email me the transcript.  Thanks.

---

**From:** Allyson Cohen [mailto:acohen@cohenlawservices.com]
**Sent:** Wednesday, September 16, 2015 9:49 AM
**To:** Wichers, Christine (USAMA)
**Cc:** Zachos, George (AGO)
**Subject:** RE: Willette v. UMass, CA No. 13-40066-TSH

Christine: At the Probate Court hearing which I attended, UMass counsel stated on the record that it recovered $2,341,612.57 which was turned over to the U.S. attorney's office. I retrieved a copy of the official court recording to ensure the accuracy of the representation.

Is it the government's position that my client is not entitled to a bounty on that amount? I really would appreciate a response. Thank you.

Respectfully yours,

**Allyson Hope Cohen, Esq.**
**Cohen Law Services, LLC**
**8 Lyman Street, Suite 200**
**Westborough, MA 01581**
**Telephone: 508-366-8805**
**Facsimile: 508-366-8803**
***www.cohenlawservices.com***

***"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."***
***John Adams***

**TREASURY DEPARTMENT CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.**

**NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (508-366-8805) or by electronic mail and then delete this message and all copies and backups thereof. Thank you.**

**From:** Wichers, Christine (USAMA) [mailto:Christine.Wichers@usdoj.gov]
**Sent:** Tuesday, September 15, 2015 12:48 PM
**To:** jfiore@bowditch.com
**Cc:** Zachos, George (AGO); Allyson Cohen
**Subject:** Willette v. UMass, CA No. 13-40066-TSH

Dear Mr. Fiore,

I received your 9/10/15 letter requesting the US's consent to the dismissal of all claims against the Estate of Leo Villani on the grounds that a probate court has found the estate to be insolvent.

The US consents to the dismissal of relator's claims against the estate with prejudice, and consents to the dismissal of the US's claims against the estate without prejudice.

Very truly yours,

Christine J. Wichers
Assistant U.S. Attorney
One Courthouse Way
Boston, MA 02210
(617) 748-3278
Christine.wichers@usdoj.gov

# WILLETTE EXHIBIT D

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
PROBATE AND FAMILY COURT DEPARTMENT

WORCESTER, SS.                    DOCKET NO. W013P-0588-EA

|  |  |
|---|---|
| ESTATE OF LEO VILLANI, ) <br> JOHN SHORO, PERSONAL ) <br> REPRESENTATIVE, ) <br> ) <br>     PETITIONER ) <br> ) <br> V. ) <br> ) <br> CREDITORS, ) <br> ) <br>     RESPONDENTS ) <br> ) <br> ) | **AFFIDAVIT OF KYLE DAVID** |

## AFFIDAVIT OF KYLE DAVID

    My name is Kyle David.  Unless otherwise noted, I make this Affidavit based on my personal knowledge and belief, and on oath do hereby state as follows:

1.    I have been employed by the University of Massachusetts ("UMass") since June 1, 2011. I am currently the Director of Internal Audit ("IA").  In that position, I lead investigations and audits at UMass, including internal investigations into alleged wrongful or fraudulent activity engaged in by UMass employees.

2.    I have been a licensed Certified Public Accountant since 1995, and a Certified Internal Auditor since 2006.

3.    Derek Scano is the Assistant Manager in IA.  Mr. Scano is a Certified Fraud Examiner, Certified Internal Auditor and Certified Information Systems Auditor.

4.     UMass records reflect that Leo Villani ("Mr. Villani") was an employee of UMass from 1999 until his death on January 6, 2013 and that, at the time of his death, Mr. Villani was employed by UMass as a Financial Analyst, working in the UMass Estate Recovery business function unit ("ERU").

5     Through the ERU, UMass acts as a contractor for the Commonwealth of Massachusetts' Executive Office of Health and Human Services ("EOHHS") to pursue and collect on Commonwealth of Massachusetts ("Commonwealth") liens placed on a decedent's estate to recoup Massachusetts Health payments previously made for the benefit of a decedent.

6.     Specifically, ERU case-workers negotiate settlements with decedents' estates, in which the estates make payments to the Commonwealth in exchange for the release of the Commonwealth's lien on the estates ("Lien Settlement Payments").

8.     Estates make Lien Settlement Payments to the Commonwealth by delivering checks to the ERU.  The ERU then remits those payments to EOHHS by depositing the checks in a specific Commonwealth bank account, which EOHHS then "sweeps".  As payment for ERU's services, EOHHS pays ERU a percentage of the Lien Settlement Payments that ERU remits to EOHHS.

9.     During the course of the IA investigation, it was discovered that ERU inputs the information regarding these matters in an electronic database called SOHEMA, which is a web-based case tracking system that tracks all information about these matters, including the people/parties/estates involved, case related documents, and Lien Settlement Payments.

10.     Mr. Villani's job responsibilities at UMass included physically depositing the Lien Settlement Payment checks received by ERU in a Commonwealth bank account, inputting the required information in SOHEMA, and sending a monthly reconciliation spreadsheet/memo to EOHHS.  As a result of his employment, Mr. Villani had an in-depth knowledge of the operation of SOHEMA and financial related activities of the ERU.

11.     Following Mr. Villani's death, UMass was informed by a co-worker of Mr. Villani that Mr. Villani may have engaged in questionable activities.

12.     Promptly upon receipt of this information, UMass initiated an investigation, which Derek Scano and I led (the "UMass investigation").

13.     As detailed below, the investigation uncovered compelling evidence that Mr. Villani embezzled funds from UMass by:

       (i) Stealing Lien Settlement Payment checks collected by ERU case-workers (the "Stolen Checks");

       (ii) Depositing the Stolen Checks in a d/b/a account that Mr. Villani opened at Milford Federal Savings and Loan Association ("Milford Federal") in the name of "Mass Estate Recovery Systems" (the "Villani d/b/a account").  The name that Mr. Villani selected for the Villani d/b/a account was very similar, but not identical, to the payee names stated on the Lien Settlement Payment checks received by ERU;

2

(iii) Depositing the Stolen Checks in the Villani d/b/a account, which were deposited notwithstanding that the payee names on the Stolen Checks were not the same as the name on the Villani d/b/a Account;

(iv) Converting the Stolen Checks for his personal use; and

(v) Constructing a sophisticated cover up of his embezzlement by manipulating and falsifying data in the SOHEMA database.

14.     The UMass investigation included the following:

(i) Analysis of data in the SOHEMA system to identify the Stolen Checks;

(ii) Review of records related to deposits in the Commonwealth bank account to confirm that the Stolen Checks had not been deposited in a Commonwealth account;

(iii) Review of Milford Bank records relating to the Villani d/b/a Account, other Villani bank accounts and other documents to confirm the deposit of the embezzled funds in those accounts;

(iv) Analysis of data in the SOHEMA system to determine the manner in which Mr. Villani manipulated falsified information input to that database in order to try to conceal his theft of the Stolen Checks;

(v) Interviews of a number of UMass-Worcester employees; and

(vi) Sequestration and review of all relevant computer devices and electronic information.

15.     The UMass investigation found substantial and compelling evidence that establishes that:

- During the time period December 2006 through December 2012, Mr. Villani embezzled $3,807,166.46 from UMass, in ninety-three (93) Stolen Checks. Each of the Stolen Checks was delivered to UMass and intended for deposit in an EOHHS/Commonwealth of Massachusetts bank account, but instead Mr. Villani embezzled them for his own personal use. See Exhibit A.

- Exhibit A shows the deposit of the Stolen Checks in the Villani d/b/a account. Column 6 of Exhibit A shows the actual check amounts. Columns 8, 9 and 10 show the date and circumstances of when the Stolen Checks were deposited into the Villani d/b/a account. Specifically, Column 8 provides a cross-reference of individual or multiple checks included in one deposit to the Villani d/b/a account. Column 9 reflects the date of the Villani d/b/a bank account statement where the deposits are recorded.  Column 10 shows the sum of the deposit to the Villani d/b/a account.

- Mr. Villani concealed his embezzlement by accessing the SOHEMA data base and entering fictitious data.  Specifically, he entered fictitious information into the "Deposit

Date" (Column 3 — Exhibit A) and "Transmittal Number" (Column 5 — Exhibit A) for 90 of the 93 Stolen Checks that Mr. Villani embezzled. The three remaining payments were recorded but the deposits were not recorded in SOHEMA.

- Monthly statements from Milford Federal for the Villani d/b/a account confirm that the Stolen Checks were, in fact, deposited into Villani's d/b/a account.

- Mr. Villani converted to his personal use the funds that he embezzled, by transferring them into other accounts, or using them to purchase assets and/or enjoy a lavish lifestyle that he could not otherwise afford, based on his UMass salary and his other resources.

Signed under the pains and penalties of perjury this ___29___ day of ___July___, 2015.

_____
Kyle David, Director
University Internal Audit
University of Massachusetts

42648689v.1

# Exhibit A

**Checks Identified As Missing**

| 1 | 2 | 3 | 4 | 5 | 6 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|
| Case Number | Check Received Date | Deposit Date | Member Name | Transmittal Number | Check Amount | DBA Account Cross Ref. of Multiple Checks to One Deposit | DBA Bank Statement | Sum Of Mult. Checks = Deposit (e.g. Sum of AA = $60,447.64) |
| EST31279 | 12/6/2006 | 10/30/2002 | Hayden, Irja | E03-013 | $ 32,618.47 | AA | September 10, 2007 (p. 8/2 | 60,447.64 |
| EST30800 | 1/10/2007 | 10/30/2002 | TIERNEY, IRENE | E03-013 | 5,280.00 | 1 Chk = Deposit | February 09, 2007 (p. 1/22 | 5,280.00 |
| EST30459 | 1/29/2007 | 10/30/2002 | GERRIE, BEVERLY | E03-013 | 47,492.55 | BB | February 09, 2007 (p. 1/22 | 55,445.80 |
| EST31663 | 2/7/2007 | 10/30/2002 | GATELY, ROSE | E03-013 | 7,953.25 | BB | February 09, 2007 (p. 1/22 | 55,445.80 |
| EST30644 | 2/22/2007 | 10/30/2002 | SAUNDERS, EDGAR | E03-013 | 99,106.66 | 1 Chk = Deposit | March 09, 2007 (p. 2/22) | 99,106.66 |
| EST28469 | 4/11/2007 | 10/30/2002 | PACK, MARY | E03-013 | 59,046.40 | 1 Chk = Deposit | May 10, 2007 (p. 4/22) | 59,046.40 |
| EST34572 | 6/18/2007 | 10/30/2002 | GREENMILLER, ALICE | E03-013 | 4,865.00 | CC | July 10, 2007 (p. 6/22) | 6,265.00 |
| EST34783 | 6/19/2007 | 10/30/2002 | SHAUGHNESSY, EDWARD | E03-013 | 1,400.00 | CC | July 10, 2007 (p. 6/22) | 6,265.00 |
| EST30405 | 7/30/2007 | 10/30/2002 | FONSECA, ISABEL | E03-013 | 27,829.17 | AA | September 10, 2007 (p. 8/2 | 60,447.64 |
| EST33461 | 8/1/2007 | 10/30/2002 | STRESCINO, RICHARD | E03-013 | 22,932.62 | DD | October 10, 2007 (p. 9/22 | 81,205.50 |
| EST33444 | 8/27/2007 | 8/30/2007 | JOHNSON, EVELYN | E08-005 | 200.00 | DD | October 10, 2007 (p. 9/22 | 81,205.50 |
| EST32245 | 8/29/2007 | 10/30/2002 | FLETHCER, CHRISTINE | E03-013 | 53,180.59 | DD | October 10, 2007 (p. 9/22 | 81,205.50 |
| EST33699 | 9/12/2007 | 10/30/2002 | COATES, THOMAS | E03-013 | 4,892.29 | DD | October 10, 2007 (p. 9/22 | 81,205.50 |
| EST33150 | 10/1/2007 | 10/30/2002 | Frias, Joseph | E03-013 | 28,299.09 | EE | November 09, 2007 (p. 10/2 | 78,200.24 |
| EST34827 | 10/9/2007 | 10/30/2002 | FENNELLY, CHESTER | E03-013 | 10,462.57 | EE | November 09, 2007 (p. 10/2 | 78,200.24 |
| EST20937 | 10/16/2007 | 10/30/2002 | INGRAM, PETER | E03-013 | 39,438.58 | EE | November 09, 2007 (p. 10/2 | 78,200.24 |
| EST39642 | 11/10/2007 | 10/30/2002 | DRISCOLL, LOUISE | E03-013 | 35,000.00 | A | December 10, 2008 | 301,830.65 |
| EST31937 | 11/15/2007 | 10/30/2002 | AHEARN, STEPHEN | E03-013 | 82,605.99 | B | January 10, 2008 | 88,788.49 |
| EST35908 | 12/10/2007 | 10/30/2002 | CARREIRO, RUDOLPH | E03-013 | 6,182.50 | B | January 10, 2008 | 88,788.49 |
| EST36113 | 2/6/2008 | 10/30/2002 | CEDRONE, JOSEPHINE | E03-013 | 78,642.11 | C | April 10, 2008 | 109,580.74 |
| EST35950 | 2/8/2008 | 10/30/2002 | ANDERSON, ROBERT | E03-013 | 853.93 | C | April 10, 2008 | 109,580.74 |
| EST34280 | 2/19/2008 | 10/30/2002 | PUPA, DORIS | E03-013 | 19,142.80 | C | April 10, 2008 | 109,580.74 |
| EST26450 | 2/26/2008 | 10/30/2002 | GRAY, ELEANDR | E03-013 | 10,941.90 | C | April 10, 2008 | 109,580.74 |
| EST36095 | 3/6/2008 | 10/30/2002 | BABABEKOV, BORIS | E03-013 | 72,148.70 | D | May 9, 2008 | 141,324.58 |
| EST32431 | 3/17/2008 | 10/30/2002 | LYNCH, SHIRLEY | E03-013 | 7,170.44 | D | May 9, 2008 | 141,324.58 |
| EST37015 | 3/19/2008 | 10/30/2002 | MURRAY, MARY | E03-013 | 2,005.44 | D | May 9, 2008 | 141,324.58 |
| EST18797 | 5/6/2008 | 10/30/2002 | SARGENT, RALPH | E03-013 | 2,122.47 | E | June 10, 2008 | 20,072.83 |
| EST33475 | 5/19/2008 | 10/30/2002 | TREAT, CHARLES | E03-013 | 5,574.00 | E | June 10, 2008 | 20,072.83 |
| EST37677 | 5/29/2008 | 10/30/2002 | Segrin, Joyce | E03-013 | 12,376.36 | E | June 10, 2008 | 20,072.83 |
| EST31080 | 6/2/2008 | 10/30/2002 | MARTORANO, ERNEST | E03-013 | 4,701.46 | F | October 10, 2008 | 17,310.46 |
| EST38289 | 6/2/2008 | 10/30/2002 | DUBIEL, ANN | E03-013 | 27,108.60 | G | November 10, 2008 | 52,516.94 |
| EST40117 | 6/2/2008 | 10/30/2002 | NOVIELLO, JDHN | E03-013 | 5,221.10 | G | November 10, 2008 | 52,516.94 |
| EST22160 | 6/3/2008 | 10/30/2002 | SWITALSKI, JENNIE | E03-013 | 50,889.67 | 1 Chk = Deposit | July 10, 2008 | 50,889.67 |
| EST37509 | 6/5/2008 | 10/30/2002 | PETRAITIS, ANNE | E03-013 | 266,830.65 | A | December 10, 2008 | 301,830.65 |
| EST34336 | 6/9/2008 | 10/30/2002 | Diggs-Sisco, Alberta | E03-013 | 118,829.71 | H | February 10, 2009 | 185,757.66 |
| EST40455 | 6/9/2008 | 10/30/2002 | STEELE, MARTHA | E03-013 | 10,622.15 | I | April 10, 2009 | 20,420.63 |
| EST38260 | 6/10/2008 | 10/30/2002 | BOOTHILLIER, DOROTHY | E03-013 | 2,296.60 | J | August 8, 2008 | 27,786.39 |
| EST38431 | 6/11/2008 | 10/30/2002 | Galvao, Caroline | E03-013 | 32,278.66 | 1 Chk = Deposit | September 10, 2008 | 32,278.66 |
| EST31358 | 6/12/2008 | 10/30/2002 | MONINSKI, BARBARA | E03-013 | 5,691.07 | H | February 10, 2009 | 185,757.66 |
| EST21168 | 6/15/2008 | 10/30/2002 | Burke, Nellie | E03-013 | 14,701.00 | H | February 10, 2009 | 185,757.66 |
| EST30192 | 6/15/2008 | 10/30/2002 | SMITH, JEAN MARIE | E03-013 | 74,828.43 | 1 Chk = Deposit | October 10, 2008 | 74,828.43 |
| EST30343 | 6/19/2008 | 10/30/2002 | DAVIDSON, JANICE | E03-013 | 1,903.16 | 1 Chk = Deposit | August 8, 2008 | 1,903.16 |
| EST31079 | 6/23/2008 | 10/30/2002 | Maglio, Ida | E03-013 | 12,609.00 | F | October 10, 2008 | 17,310.46 |
| EST35751 | 6/23/2008 | 10/30/2002 | SHAKESPEARE, DOLORES | E03-013 | 2,774.00 | H | February 10, 2009 | 185,757.66 |
| EST32324 | 6/24/2008 | 10/30/2002 | CRISTINA, MARIA | E03-013 | 20,187.24 | G | November 10, 2008 | 52,516.94 |
| EST39226 | 6/25/2008 | 10/30/2002 | TATE, RAYMOND | E03-013 | 25,489.79 | J | August 8, 2008 | 27,786.39 |
| EST38003 | 6/26/2008 | 10/30/2002 | STEEVES, JAMES | E03-013 | 4,873.16 | H | February 10, 2009 | 185,757.66 |
| EST40899 | 6/26/2008 | 10/30/2002 | MARQUES, BARBARA | E03-013 | 38,888.72 | H | February 10, 2009 | 185,757.66 |
| EST41908 | 6/28/2008 | 10/30/2002 | Raspa, Olga | E03-013 | 41,565.44 | K | November 10, 2009 | 72,430.19 |
| EST31948 | 6/29/2008 | 10/30/2002 | DEMING, DAVID | E03-013 | 30,864.75 | K | November 10, 2009 | 72,430.19 |
| EST34588 | 6/29/2008 | 10/30/2002 | GLYNN, JOHN | E03-013 | 21,030.00 | L | January 8, 2010 | 25,930.14 |
| EST33751 | 6/30/2008 | 10/30/2002 | O'NEIL, WILLIAM | E03-013 | 4,900.14 | L | January 8, 2010 | 25,930.14 |
| EST40641 | 2/18/2009 | 10/30/2002 | DUPUIS, DAVID | E03-013 | 9,798.48 | I | April 10, 2009 | 20,420.63 |
| EST30493 | 3/16/2009 | 10/30/2002 | BLACK, DAVID | E03-013 | 86,058.43 | M | May 8, 2009 | 124,759.22 |
| EST38211 | 4/6/2009 | 10/30/2002 | BULAT, ANNA | E03-013 | 38,700.79 | M | May 8, 2009 | 124,759.22 |
| EST89735 | 8/2/2010 | 10/30/2002 | CAMPBELL, CLARA | E03-013 | 1,106.92 | N | September 10, 2010 | 5,689.40 |
| EST40823 | 11/16/2010 | 10/30/2002 | DIMAGGIO, JOSEPH | E03-013 | 307,000.00 | 1 Chk = Deposit | January 10, 2011 | 307,000.00 |
| EST90620 | 11/29/2010 | 10/30/2002 | MACLEOD, GORDON | E03-013 | 30,427.78 | 1 Chk = Deposit | December 10, 2010 | 30,427.78 |
| EST92484 | 12/1/2010 | 10/30/2002 | WHALEY, BEULAH | E03-013 | 43,701.49 | 1 Chk = Deposit | December 10, 2010 | 43,701.49 |
| EST88930 | 3/17/2011 | 10/30/2002 | SKLAVER, EDITH | E03-013 | 30,883.72 | 1 Chk = Deposit | April 8, 2011 | 30,883.72 |
| EST112399 | 9/20/2011 | 10/30/2002 | MAZAIKA-GELINAS, THERES | E03-013 | 20,000.00 | 1 Chk = Deposit | October 10, 2011 | 20,000.00 |
| EST86999 | 9/23/2011 | 10/30/2002 | DUNBRACK, ARTHUR | E03-013 | 16,176.51 | 1 Chk = Deposit | October 10, 2011 | 16,176.51 |
| EST98876 | 10/5/2011 | 10/30/2002 | DIXON, BARBARA | E03-013 | 122,365.84 | 1 Chk = Deposit | November 10, 2011 | 122,365.84 |
| EST110312 | 10/16/2011 | 10/30/2002 | DAMBROSIO, THOMAS | E03-013 | 10,596.18 | 1 Chk = Deposit | November 10, 2011 | 10,596.18 |
| EST39748 | 12/13/2011 | 10/30/2002 | THIBDDEAU, DORIS | E03-013 | 99,425.77 | 1 Chk = Deposit | January 10, 2012 | 99,425.77 |
| EST83463 | 2/2/2012 | 10/30/2002 | DUBOIS, JOAN | E03-013 | 26,417.42 | 1 Chk = Deposit | March 9, 2012 | 26,417.42 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| EST101409 | 3/1/2012 | 10/30/2002 | STROH, JEAN | E03-013 | 82,242.19 | 1 Chk = Deposit | April 10, 2012 | 82,242.19 |
| EST124137 | 5/14/2012 | 10/30/2002 | QUINLAN, EDWARD | E03-013 | 30,325.03 | 1 Chk = Deposit | May 18, 2012 | 30,325.03 |
| EST122973 | 5/21/2012 | 10/30/2002 | CRONIER, RALPH | E03-013 | 18,000.00 | 1 Chk = Deposit | June 8, 2012 | 18,000.00 |
| EST102291 | 5/22/2012 | 10/30/2002 | MILLIGAN, ROBERTA | E03-013 | 25,670.00 | O | June 8, 2012 | 66,578.98 |
| EST41355 | 5/23/2012 | 10/30/2002 | PACHECO, EMILIA | E03-013 | 40,908.98 | O | June 8, 2012 | 66,578.98 |
| EST52834 | 6/8/2012 | 10/30/2002 | RICHARD, MARGARET | E03-013 | 36,906.96 | P | July 10, 2012 | 118,767.98 |
| EST54765 | 6/8/2012 | 10/30/2002 | WHITFORD, LOUISE | E03-013 | 38,004.62 | P | July 10, 2012 | 118,767.98 |
| EST31480 | 6/21/2012 | 10/30/2002 | MALFA, ANN | E03-013 | 40,000.00 | P | July 10, 2012 | 118,767.98 |
| EST83890 | 6/25/2012 | 10/30/2002 | CAPRARELLA, MARY | E03-013 | 3,856.40 | P | July 10, 2012 | 118,767.98 |
| EST27103 | 7/9/2012 | 10/30/2002 | CORBETT, MARY | E03-013 | 35,005.93 | Q | August 10, 2012 | 99,934.70 |
| EST102225 | 7/19/2012 | 10/30/2002 | EISENHAURE, CYNTHIA | E03-013 | 64,928.77 | Q | August 10, 2012 | 99,934.70 |
| EST99966 | 41,117.00 | 37,559.00 | PIMENTAL, ANNA | E03-013 | 30,535.12 | R | September 10, 2102 | 153,861.50 |
| EST131633 | 41,127.00 | 37,559.00 | ANDERSON, BETTY | E03-013 | 164,553.67 | S | September 10, 2102 | 188,272.40 |
| EST105947 | 41,136.00 | 37,559.00 | COCHRAN, HAZEL | E03-013 | 123,326.38 | R | September 10, 2102 | 153,861.50 |
| EST88159 | 8/28/2012 | 10/30/2002 | SMITH, RUTH | E03-013 | 23,718.73 | S | September 10, 2102 | 188,272.40 |
| EST134381 | 9/4/2012 | 10/30/2002 | LAMONTAGNE, JANE | E03-013 | 14,848.92 | 1 Chk = Deposit | September 10, 2102 | 14,848.92 |
| EST111377 | 10/11/2012 | 10/30/2002 | DODD, GERALDINE | E03-013 | 166,649.18 | T | November 9, 2012 | 251,677.36 |
| EST124208 | 10/11/2012 | 10/30/2002 | DACOSTA, NATALIA | E03-013 | 26,509.09 | T | November 9, 2012 | 251,677.36 |
| EST127840 | 10/18/2012 | 10/30/2002 | WILCOX, CAROL | E03-013 | 57,500.07 | T | November 9, 2012 | 251,677.36 |
| EST95489 | 12/10/2012 | 10/30/2002 | NADEAU, JOSEPH | E03-013 | 1,019.02 | T | November 9, 2012 | 251,677.36 |
| EST23019 | 6/21/2010 | 6/25/2009 | SMITH, IDA | E09-040 | 109,532.04 | V | August 10, 2010 | 129,031.41 |
| EST43822 | 6/21/2010 | 6/25/2009 | SILVIA, LEONARD | E09-040 | 19,499.37 | V | August 10, 2010 | 129,031.41 |
| EST27985 | 3/12/2008 | 3/31/2008 | KTENAKIS, VIVIAN | E08-025 | 60,000.00 | D | May 9, 2008 | 141,324.58 |
| EST90046 | 8/9/2010 | 6/28/2010 | MACLAY, RUTH | A10-070 | 4,582.48 | N | September 10, 2010 | 5,689.40 |
| EST84503 | 11/5/2012 | - | CURRIER, PHILIP | - | 101,231.62 | U | January 10, 2013 | 147,535.80 |
| EST108696 | 12/4/2012 | - | POTTER, HAZEL | - | 6,751.44 | U | January 10, 2013 | 147,535.80 |
| EST123193 | 11/1/2012 | - | PENA, YOLANDA | - | 39,552.74 | U | January 10, 2013 | 147,535.80 |

| | | |
|---|---|---|
| **Total missing** | $ | 3,807,166.46 |
| **Total found deposited into L Villani** | | |
| **DBA Account** | $ | 3,807,166.46 |
| **Total remaining** | $ | - |

# WILLETTE EXHIBIT E

**From:** Heatwole, Deirdre [mailto:dheatwole@umassp.edu]
**Sent:** Tuesday, February 12, 2013 11:08 AM
**To:** Willette, Michael; Healy, James; David, Kyle
**Cc:** Heatwole, Deirdre (Pres Office)
**Subject:** RE: Notification

Mr. Willette, Assistant Attorney General George Zachos, of the AG's Medicaid Fraud Division, has been informed of the University's investigation into the potential misappropriation of state funds and that you initially brought this matter to the University's attention.

The Attorney General's office number is 617-727-2200.

*Deirdre Heatwole*
*General Counsel*
*University of Massachusetts*
*225 Franklin St., 12th floor*
*Boston, MA 02110*
*617-287-4064*

