UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA and COMMONWEALTH OF MASSACHUSETTS, *ex rel.* MICHAEL A. WILLETTE,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF MASSACHUSETTS, WORCESTER A/K/A UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL, THE ESTATE OF LEO VILLANI, and JOHN DOES,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 4:13-CV-40066-TSH |

**MEMORANDUM AND ORDER ON THE UNITED STATES' MOTION FOR RECONSIDERATION (Docket No. 106), UMASS'S MOTION FOR PROTECTIVE ORDER (Docket No. 107), AND THE COMMONWEALTH'S MOTION FOR PROTECTIVE ORDER (Docket No. 109)**

**March 3, 2016**

**HILLMAN, D.J.**

## Background

Michael A. Willette brought this *qui tam* False Claims Act (FCA) suit, on behalf of the United States and the Commonwealth of Massachusetts, against the University of Massachusetts Medical School (UMass) and the estate of Leo Villani. Willette alleged that UMass and Villani violated the FCA, 31 U.S.C. §§ 3729-3733, and the Massachusetts False Claims Act (MFCA), Mass. Gen. Laws ch. 12, § 5A-O, by committing various acts of Medicaid fraud. Willette further alleged that Villani, an employee of UMass, had used his position in UMass's Estate Recovery Unit to misappropriate more than $3 million, the collection of which funds he had facilitated on

1

behalf of the Commonwealth as healthcare reimbursements.  Villani passed away in January of 2013, shortly before Willette discovered the misappropriation.

Willette alerted UMass of the misappropriation in January of 2013 and filed this lawsuit on June 5, 2013.  The United States and the Commonwealth declined to intervene in the lawsuit.  In early June of 2014, UMass repaid $3,807,166.46 to the Commonwealth, and the Commonwealth agreed to release UMass from any and all claims relating to Villani's misappropriation. (Docket No. 89-1 at 3-4.)  Subsequently, in January of 2015, this Court granted UMass's motion to dismiss, on the ground that the FCA does not authorize *qui tam* suits by private relators against state agencies.  This decision was affirmed on appeal. *United States v. Univ. of Massachusetts, Worcester*, No. 15-1239, 2016 WL 325026, at *1 (1st Cir. Jan. 27, 2016).  Willette filed the instant motion for a relator's share on October 16, 2015.  The United States and the Commonwealth opposed the motion.  On October 21, 2015, Willette stipulated to the dismissal of the estate of Villani, after learning that the estate was insolvent.

After hearing arguments on Willette's motion for a relator's share, this Court concluded that limited discovery would be necessary to determine whether Willette may be entitled to such a share pursuant to 31 U.S.C. § 3730(c)(5).  Section 3730(c)(5), the so-called "alternate remedy provision," preserves a *qui tam* plaintiff's right to a share of the proceeds when the government chooses to seek an alternate remedy rather than intervening as a plaintiff in the relator's *qui tam* suit.  On January 11, 2016, this Court issued a preliminary order (Docket No. 100) granting the parties two months to conduct limited discovery regarding the circumstances under which UMass repaid the $3,807,166.46 to the Commonwealth and the circumstances of the Commonwealth's subsequent remittance, if any, to the United States.  On January 29, 2016, the United States filed a motion for reconsideration of this Court's preliminary order allowing discovery.  On February

2

2, 2016, UMass moved for a protective order to bar all discovery requests. On February 10, 2016, the Commonwealth also moved for a protective order to bar all discovery requests. The United States' motion for reconsideration (Docket No. 106) is ***denied*** on the grounds that the motion raises no new arguments. UMass's and the Commonwealth's motions for protective orders (Docket Nos. 107 and 109, respectively) are also ***denied***, for the reasons set forth below.

## Discussion

A. *UMass's Motion for a Protective Order (Docket No. 107)*

UMass seeks an order protecting it from all discovery requests on the basis of Eleventh Amendment sovereign immunity. Willette has asserted the following requests of UMass: eleven interrogatories, twenty requests for production of documents, and five depositions of UMass employees. UMass asserts that these requests are akin to a "suit" for purposes of sovereign immunity. As a threshold matter, UMass is not currently a party to this lawsuit. Although the procedural nature of this case is convoluted at best, UMass was dismissed from the suit in January of 2015, and this decision was affirmed by the First Circuit in January of 2016. Thus, any discovery requests relating to UMass should proceed as nonparty discovery pursuant to Rule 45 of the Federal Rules of Civil Procedure.

Regarding UMass's entitlement to immunity, I find that nonparty discovery does not constitute a "suit" for purposes of the Eleventh Amendment. State sovereign immunity is derived from the Eleventh Amendment, which reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Despite its literal text, the Eleventh Amendment has long been "interpreted as an affirmation of state sovereign immunity," meaning that it bars an individual from bringing an action against a

state in federal court. *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (quoting *Maysonet–Robles v. Cabrero,* 323 F.3d 43, 48 (1st Cir. 2003)). This bar extends to "instrumentalities of the state, such as state agencies." *Id.* (citing *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429–30 (1997)). The courts of this Circuit have not addressed the issue of whether state agencies are entitled to sovereign immunity from nonparty discovery requests in federal lawsuits. The Supreme Court has also yet to address this issue. *See, e.g., U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 467 (1951).

UMass cites to two appellate cases, from the Eight and Tenth Circuits, in which the courts held that nonparty subpoenas were "suits" for purposes of tribal immunity. *See Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1156 (10th Cir. 2014); *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1102 (8th Cir. 2012). However, the holdings of these cases do not apply to the case at hand, because UMass is asserting state sovereign immunity pursuant to the Eleventh Amendment. Tribal immunity and Eleventh Amendment immunity are related but importantly distinct concepts. *See Kiowa Tribe v. Mfg. Techs., Inc.,* 523 U.S. 751, 753-59 (1998); *Hans v. Louisiana,* 134 U.S. 1, 11-15 (1890).

UMass also cites to a case from the Eastern District of California, in which the estate of a deceased correction officer brought a suit under 42 U.S.C. § 1983 against various individuals who were employed by the state department of corrections. *Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226, 1226-27 (E.D. Cal. 2006). The plaintiff served subpoenas on the nonparty department of corrections, and the District Court held that the department could not be compelled to respond to the subpoenas because it enjoyed sovereign immunity from suit in federal court. *Id.* at 1227, 1229-30.

Two years later, however, a different judge within the same district expressly rejected the finding in *Estate of Gonzalez*, concluding that the Eleventh Amendment does not preclude discovery from a nonparty State agency. *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008). The *Allen* court confronted the issue of "whether issuance and required compliance with a third-party subpoena by State custodians of records in an action in which the State is not a party constitutes 'any suit in law or equity, commenced or prosecuted against one of the United States' within the meaning of the Eleventh Amendment." *Id.* at 1078. In ascertaining the definition of "suit" in the context of sovereign immunity, the *Allen* court quoted Chief Justice Marshall in *Cohens v. Virginia*, 19 U.S. 264, 407-08 (1821):

> We understand [a suit] to be the prosecution, or pursuit, of some claim, demand, or request. In law language, it is the prosecution of some demand in a Court of justice. The remedy for every species of wrong is, says Judge Blackstone, 'the being put in possession of that right whereof the party injured is deprived.' . . . To commence a suit, is to demand something by the institution of process in a Court of justice; and to prosecute the suit, is, according to the common acceptation of language, to continue that demand.

The *Allen* court then reiterated the Supreme Court's general rule that "a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.'" *Dugan v. Rank,* 372 U.S. 609, 620 (1963) (quoting *Land v. Dollar,* 330 U.S. 731, 738 (1947)). Also relevant is whether "the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704 (1949). The court found that these principles do not apply to nonparty discovery subpoenas, which will not result in a judgment or relief of any kind requiring financial payment from the state. *Allen*, 544 F. Supp. 2d at 1079.

Moreover, the *Allen* court explained a fundamental practical problem with the earlier court's ruling:

5

> To apply *Estate of Gonzalez* would mean that a plaintiff who sues a state official in his individual capacity, a lawsuit specifically authorized by the United States Supreme Court, will never be able to prove his or her case, if any required proof is in the hands of the State's custodian of records.[] Such a result is ludicrous. This is evident from the Eleventh Amendment's express language, "any suit in law or equity, commenced or prosecuted against one of the United States" as it has been interpreted by the United States Supreme Court.

*Id.*

I find the *Allen* court's rationale persuasive. Moreover, this position is supported by numerous other federal decisions. *See Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008) ("[A]n order commanding a state official who is not a party to a case between private persons to produce documents in the state's possession during the discovery phase of the case" does not violate the Eleventh Amendment "because [it does] not compromise state sovereignty to a significant degree"); *In re Missouri Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997) ("There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court."); *Ali v. Carnegie Inst. of Washington*, 306 F.R.D. 20, 30 n.8 (D.D.C. 2014) (noting hypothetically that the Eleventh Amendment would "not completely shield [the University of Massachusetts] from certain non-party discovery requests" if it were not joined as a party); *Arista Records LLC v. Does 1-14*, No. 7:08CV00205, 2008 WL 5350246, at *1-*3 (W.D. Va. Dec. 22, 2008) (nonparty state university's motion to quash subpoenas was denied on the grounds that the doctrine of sovereign immunity did not apply to third-party subpoena requests); *Laxalt v. McClatchy*, 109 F.R.D. 632, 634 (D. Nev. 1986) (affirming magistrate's denial of nonparty state agency's motion to dismiss discovery subpoena and notice of deposition; rejecting agency's argument for Eleventh Amendment immunity). Accordingly, I find that UMass is not entitled to assert sovereign immunity as a bar to nonparty discovery requests.

UMass raises two alternate grounds for barring all discovery requests. First, they ask this Court to make a finding on the issue of whether Willette has alleged a valid FCA claim against Villani. Second, according to UMass, if Willette were entitled to a share of any funds, it would only be a share of funds that were paid to the government from Villani's estate. UMass asserts that, because the money was paid to the Commonwealth by UMass from a collection of sources, Willette is not entitled to any of the funds, and discovery is therefore unnecessary. These arguments bear on the ultimate issue of whether Willette is entitled to a relator's share and are beyond the scope of a motion for a protective order.

Finally, UMass argues in general terms that Willette's discovery requests are overly broad and burdensome. This may indeed be the case, but this Court cannot rule on the issue until UMass has formulated its objections into a more thorough and tailored argument. Furthermore, as a nonparty, UMass should have been served with subpoenas pursuant to Rule 45 rather than direct discovery requests. Once Willette tailors his requests accordingly, UMass may then, if necessary, file a motion to quash.

To be clear, this Court views only one potential avenue for Willette's ability to collect a relator's share. If the facts alleged in Willette's Second Amended Complaint outlining Villani's misappropriation of approximately $3.8 million are sufficient to state a valid claim under 31 U.S.C. § 3729(a)(1)(D),[1] and if Willette shows that the Commonwealth and/or the United States pursued an alternate remedy pursuant to 31 U.S.C. § 3730(c)(5) to collect these funds, then Willette may be entitled to a relator's share. Discovery shall be narrowly tailored to that theory of recovery only.

---

[1] Plaintiffs are not required to set forth correct legal theories in their complaints, so long as the facts are sufficiently pled. *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).

B. *The Commonwealth's Motion for a Protective Order (Docket No. 109)*

The Commonwealth has also moved for a protective order to bar all discovery requests. The Commonwealth adopts the reasoning set forth in the memorandum accompanying the United States' motion for reconsideration and the memorandum accompanying UMass's motion for a protective order, on the ground that the MFCA and the FCA have been interpreted "virtually identical[ly] in all aspects material to this dispute." (Docket No. 110 at 1.)

However, the Commonwealth, unlike UMass, is a party to the instant dispute over Willette's entitlement to a relator's share. Thus, the nonparty sovereign immunity arguments raised by UMass do not apply to the Commonwealth's situation. Willette is entitled to limited discovery from the Commonwealth, pursuant to this Court's preliminary order. To the extent that Willette's discovery requests are overly broad, the Commonwealth should file a motion specific to that point.

## Conclusion

For the reasons set forth above, the United States' motion for reconsideration (Docket No. 106) is ***denied***, UMass's motion for a protective order (Docket No. 107) is ***denied***, and the Commonwealth's motion for a protective order (Docket No. 109) is ***denied***.

The parties shall have thirty (30) days from the date of this order to complete discovery. On April 4, 2016, at 2:00 p.m., this Court will conduct a status conference, in order to determine the appropriate course for resolution of the underlying motion.

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**